# In the
# United States District Court
## For the
## Western District of Wisconsin

Michael Mason,

        Plaintiff,

v.                                Case No.    19-cv-83

Green County,
and Bradley J. Gilbert, Randall A. Teutschmann, and Scott A. Ellefson,
all in their individual capacities,

        Defendants.

# COMPLAINT

## I.   NATURE OF ACTION

101.   The Plaintiff brings this civil action under Title 42 U.S.C. §1983 to obtain appropriate relief for the violations of rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, which occurred when members of Green County Sheriff's Department unlawfully entered his home without a warrant and without facts to support a reasonable belief that any exception to the warrant requirement obtained.

## II. JURISDICTION AND VENUE

### A. Jurisdiction.

201. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

### B. Venue

202. The Western District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of U.S.C. § 1391(b).

## III. PARTIES

### A. Plaintiffs

301. The Plaintiff, Michael Mason, is a natural person with the capacity to sue and be sued in this Court.

### B. Defendants

302. Defendants Bradley J. Gilbert, Randall A. Teutschmann, and Scott A. Ellefson are all natural persons, each with the capacity to sue and be sued in this Court.

303. Each individual Defendant was a deputy sheriff employed by the Defendant Green County at all times material to this action.

304. Each individual Defendant was acting within the scope of his or her employment as a deputy sheriff for the Defendant Green County, within the meaning of § 895.46 Wis. Stats., at all times material to this action.

305. Each individual Defendant was acting under color of state law at all times material to this action.

306. The Defendant Green County is a Wisconsin county with the capacity to sue and be sued in this Court, which was the employer of all of the individual Defendants when the wrongful acts alleged herein were committed.

IV. **ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION**

  A. **Background: A Shakespearian Misunderstanding**

401. On October 17, 2016, Plaintiff Michael Mason was at the home of his parents at 211 West Main Street, in the Village of Brooklyn.

402. He lived next door, at 210 Bowman Street.

403. He got into an argument with his father, James Mason, over the repayment of some money Michael owed to James.

404. Both men became quite angry.

405. In connection with the repayment, James also demanded the return of a gun he had been letting Michael borrow for hunting.

406. Frustrated, Michael brushed past his mother, Sharon R. Mason, and daughter, Madeline R. ("Maddie") Mason, while declaring that he would "Go and get the gun."

407. Although Michael's exclamation had been nothing more or less, in context, than a surrender to his father's demand that he promptly return the firearm in question, his daughter, Maddie, had not heard enough of the preceding father-son exchange to know this and interpreted Michael's stated intention to "go and get the gun" as a threat to commit mayhem. She called 911.

### B. Law Enforcement Officers Respond in Force, but Soon Learn There is no Danger.

408. The individual Defendants, Green County Deputies Bradley J. Gilbert, Randall A. Teutschmann, and Scott A. Ellefson, were dispatched to 211 West Main Street, as mutual aid to the village of Brooklyn Police Department.

409. Brooklyn Chief James F. Barger arrived shortly after the deputies. He was the first law enforcement officer to make contact with the occupants in the James Mason house.

410. Officers from other jurisdictions also responded to the scene.

411. When Deputy Gilbert arrived at 1:20 p.m., the Evansville officer was already positioned to the rear of Michael's house by a van that was parked roughly near the rear property lines of Michael's residence and his parent's residence.

412. From that vantage point, the Evansville officer could see the dining room area inside the house, as there were patio doors facing north that led out onto an outside porch.

413. Other officers were stationed in a perimeter around Michael's house.

414. Officers approached the house more closely and could not see anyone in the home.

415. No one, including Maddie and her grandparents, ever saw Michael enter his home after the dispute.

416. On the south side of the house, the garage door was open with a parked car used by Maddie inside.

417. Michael's car was not on the premises.

418. At 1:33 p.m., Deputy Gilbert was advised that no one had been hurt in the incident.

419. Further, he was told that the borrowed gun in question was kept at the family cabin up north, not at Michael's house, and that no one had seen Michael enter the house and no one had seen him present within it.

420. At the same time, Deputy Ellefson learned there were no guns in the house and that Michael's guns were in Waushara County, which is the location of the family cabin.

421. At 1:34 p.m., the deputies confirmed that the car parked in the garage was used by Maddie, and that Michael's car, a gray-colored Chevy, was not there.

422. Deputies discussed making phone contact before deciding whether to go into Michael's residence.

423. An officer obtained Michael's phone number from his parents and was told by the parents that Michael had probably either left for his job in Madison or was going to the family cabin up north.

424. Phone records indicate that Michael spoke with law enforcement beginning at 1:37 p.m.

425. According to Chief Barger's report, Green County Dispatch was able to talk to Michael on his cell phone and confirmed that Michael was getting into his truck at 1342 Packers Avenue in Madison as he was getting ready to leave his place of employment to haul a load.

426. In the same nine-minute telephone call, the dispatcher then patched Chief Barger through to Michael.

427. Michael told Barger that he had left the area in his car and gone to his work as a semi-truck driver for a company based in Madison.

428. Michael told Barger where he was located in Madison and that he was waiting for his truck to be loaded.

429. Chief Barger then conveyed this information to the other officers, including the individual Defendants.

430. Deputy Gilbert's squad car recorded a conversation at 1:41 p.m., in which it was stated that Michael was at 1342 Packers Avenue (a location in Madison, Wisconsin approximately 23.4 miles and a 32 minute drive away).

431. Despite being told his exact location, law enforcement did not request assistance from the Madison Police Department to contact Michael, or attempt in any other way to verify the truth of his statement.

432. Michael waited at that location for almost two hours, at which time he contacted the Brooklyn Police Department and told them that he had to leave with his loaded semi.

      **C.**    **The Individual Defendants Unlawfully Enter Michael Mason's Home.**

433. At 1:42 p.m., Deputy Ellefson's squad car recorded a conversation which is indicative of the officers at the scene beginning to stand down and preparing to leave. A deputy then states, "Unless you want to do a quick sweep of the house."

434. This is followed by a conversation to the effect of, "Either we can all meet back here or we can do a protective sweep of the house."

435. The three individual defendants then approached the front door of Michael's house to gain entry.

436. At 1:45 p.m., prior to entering the residence, the individual defendants knocked on the door and someone yelled, "Michael, come out!"

437. No one answered.

438. At 1:47 p.m., Deputy Bradley J. Gilbert, Deputy Randall A. Teutschmann, and Deputy Scott A. Ellefson, entered Michael's house without a warrant and without the consent of any person living at the residence.

439. This entry of Michael's home violated the Fourth Amendment, as Circuit Judge Vale later ruled.

440. The decision to enter the house without a warrant, without consent, and with no reason to believe that Michael Mason was anywhere but where he had told Chief Barger he was: at his place of employment in Madison waiting for his truck to be loaded, was objectively unreasonable.

441. Michael's daughter, Maddie resided at Michael's house, and could have given lawful consent for the officers to enter had she been asked, but her consent was never requested by any of the other the officers, even though she was at the adjacent house and Chief Barger had been speaking with her.

442. Had she been asked for consent to enter, she could have explained, either on her own or with the assistance of her grandparents, that there had been no threat, that Michael appeared to have driven away, and that there were no guns in the house.

### D. A Marijuana sighting leads to a search warrant, a second search, and a felony drug prosecution.

443. During their search of the house, officers found no weapons, and no persons but they did find a marijuana growing operation in the basement, which was the private residence of Michael's tenant, Marty J. Packard.

444. A search warrant was then obtained.

445. At 4:10 p.m., a second search of Michael's house was conducted.

446. Photographs were taken of the grow operations and items of alleged controlled substances and other evidence were seized.

447. The factual basis for the search warrant relied almost entirely on the observations of the grow operation made during the warrantless search.

448. The observations of the officers made during the warrantless search, as well as the observations made during the second search and the items seized in the second search, led to the arrest and prosecution of Michael and of Mr. Packard on felony drug charges.

### E. The Circuit Court declares the initial entry unconstitutional, and suppresses all of its fruit.

449. Appearing for Michael in the criminal case, Attorney Robert Duxstad filed a motion to suppress evidence, on the ground that the warrantless entry had violated the Fourth Amendment, and thus both searches had been unlawful.

450. On July 13, 2017, Attorney Duxstad appeared with Michael Mason in the Green County Circuit Court before Judge Thomas J. Vale.

451.	At that time Judge Vale gave an oral decision on Attorney Duxstad's motion to suppress evidence.

452.	The Court held that the search of Michael Mason's home had violated the Fourth Amendment and granted the defense motion to suppress.

453.	Later, District Attorney Craig Nolen moved to dismiss counts one through five of the information, and his motion was granted.

454.	Those five counts comprised all of the drug charges. There was only one count remaining and that was a misdemeanor charge of disorderly conduct arising from the family squabble at Michael's parents' home.

455.	Michael later pleaded no-contest to this charge pursuant to a plea bargain.

456.	Michael Mason was injured in a number of significant ways by the unlawful entry.

457.	The unlawful search of his home led directly to a felony drug prosecution being launched against Michael Mason for a marijuana operation in which he had no part. Although it has been dismissed it remains on his record and will affect his employment prospects, his credit, and his relationships, for the rest of his life.

458.	He had to retain criminal defense counsel, in the person of Robert Duxstad. For the defense of the criminal charges, Attorney Duxstad charged him the following fees.

| Legal Fees: | $15,122.50 |
| --- | --- |
| Costs | $159.51 |
| Interest | $275.05 |
| Total | $15,557.06 |

459.   These fees and costs were reasonable under the circumstances.

460.   Because of the charges against him, and his need to miss work for court appearances, Michael Mason was terminated from his job driving over the road as an owner-operator, affiliated with O'Mara Moving Systems.

461.   He was able to keep his position until roughly May 9, 2017, but at that time he was asked to return his truck.

462.   His pay records show that he was earning nearly $1,964 per week as an owner-operator.

463.   Beginning about May 19, he took a job for Marshall Bros. Farms as a short-haul truck driver, earning only $1,000 per week.

V.      **BASES OF LIABILITY**

　　A.      **Federal Civil Rights Claims**

　　　　1.      **Fourth Amendment.**

　　　　　　a.      **Unlawful Entry.**

501.    The individual Defendants each committed violations of the Fourth Amendment's prohibition on unreasonable searches and seizures when they entered Michael Mason's home.

502.    A warrantless entry of a home which is not justified by any of the exceptions to the warrant requirement violates the Fourth Amendment and is actionable for damages in an action under the Civil Rights Act of 1871, 42 U.S.C. § 1983. *Jones v. Wilhelm*, 425 F.3d 455 (7th Cir. 2005).

　　B.      **Statutory Indemnification Liability of Defendant City**

503.    The Defendant Green County is liable for the unlawful acts of the individual defendants because they were acting within the scope of their employment pursuant to Sec. 895.46, Wis. Stats.

504.    The Plaintiff does not allege at this time that the wrongful acts alleged herein were carried out pursuant to a custom or policy of the Defendant Green County.

## VI.   DAMAGES and EQUITY

### A.   Compensatory Damages

601.   By virtue of the unlawful actions alleged above, the Plaintiff suffered the devastation of his personal and professional reputation, emotional distress, loss of liberty, financial losses including attorneys' fees, and other damages for which he should be compensated in amounts deemed just by the Court.

### B.   Punitive Damages

602.   Because the acts of the individual Defendants herein alleged were carried out with reckless disregard for the Plaintiff's fundamental rights, the Plaintiffs also seek an award of punitive damages against each of the individual Defendants to deter them and others similarly situated from committing similar wrongful acts in the future.

## VII.   CONDITIONS PRECEDENT

701.   All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court grant judgment against the Defendants, awarding him compensatory damages in amounts that will fairly compensate him for his injuries; punitive damages in amounts that will adequately deter

the individual Defendants and others similarly situated from similar unlawful actions in the future; and costs, attorneys' fees and litigation expenses, as well as any further relief this Court deems just and lawful.

Dated this Monday, February 04, 2019.

Respectfully submitted,

MICHAEL MASON,

Plaintiff,

By


THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, WI  53703-3225
Phone:         608 283-6001
Fax:           608 283 0945
E-mail:        jsolson@scofflaw.com


/s/    Jeff Scott Olson
_____
Jeff Scott Olson

ATTORNEYS FOR PLAINTIFF